UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ALBERTO GOMEZ ROSARIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>Defendants. | Case No. 21-cv-09232-JSC<br><br>**ORDER ON MOTION TO DISMISS/FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 12 |

The United States Citizenship and Immigration Service ("USCIS") found Plaintiff Luis Alberto Gomez Rosario ("Gomez") ineligible for U nonimmigrant status under 8 U.S.C. § 1101(a)(15)(U)(iii). Mr. Gomez and his wife, Juana Maria Olivares Angel ("Angel"), filed this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, seeking to reverse USCIS's decision and remand the matter to USCIS for further consideration. (Dkt. No. 1.) Defendants Alejandro Mayorkas, Susan Dibbins, and Loren K. Miller moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12.) In the alternative, Defendants moved for summary judgment affirming the USCIS decision. (*Id*.) Plaintiffs opposed Defendants' motions and made a cross-motion for summary judgment based on the administrative record. (Dkt. No. 13.) The Court held a hearing on the motions on June 23, 2022. After carefully considering the briefing and oral argument, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Motions.

**BACKGROUND**

Mr. Gomez is a 41-year-old citizen of Mexico. (Dkt. No. 1 ¶ 5.) Ms. Angel is a 35-year-old citizen of Mexico. (*Id*.) Mr. Gomez and Ms. Angel ("Plaintiffs") reside in Santa Rosa, California. (*Id*. ¶ 3.) Plaintiffs have three children who were born in the United States. (*Id*. ¶ 5.)

## I. The Underlying Incident

In 2014, Mr. Gomez worked at a Shell Gas Station in Santa Rosa, California. (Dkt. No. 12-3 at 99.[1]) According to a police report, Juan Galvez ("Galvez") entered the gas station and attempted to purchase alcohol. Galvez appeared to be inebriated. (*Id.*) Due to Galvez's intoxicated state, Mr. Gomez and a co-worker refused to sell the alcohol to Galvez. (*Id.*) Galvez grew angry and "walked over to the area that allows access to the back of the check-out counter." (*Id.*) Mr. Gomez "stepped up to the same area" to prevent Galvez from coming behind the counter. (*Id.*)

Galvez punched Mr. Gomez in the face. (*Id.*) The punch struck Mr. Gomez's lower lip. Mr. Gomez pushed Galvez back towards the center of the store. (*Id.*) Eventually, Galvez left the store after attempting to lunge towards Mr. Gomez "several times." (*Id.*)

The police arrived and arrested Galvez. The police documented that Mr. Gomez had "no visible injuries" at that time. (*Id.*) The police booked Galvez for violations of California Penal Code ("CPC") § 242 (Battery), CPC § 647(f) (Public Intoxication), and CPC § 1203.2 (Violation of Probation). (*Id.*) Mr. Gomez cooperated with the police investigation. (*Id.*)

## II. The U-Visa Statutory Scheme

In 2000, Congress created the U nonimmigrant status or the "U-Visa" as part of the Victims of Trafficking and Violence Protection Act of 2000 (the "Act"). Pub. L. 106-386, § 1513, 114 Stat. 1464 (2000). U nonimmigrant status is a classification for victims of certain crimes who report those crimes to law enforcement and cooperate in their investigation or prosecution. Congress later passed legislation directing the Secretary of Homeland Security and others to promulgate regulations to implement the provisions of the Act. Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109-162, 828, 119 Stat. 2960 (2006). DHS's resulting regulations give USCIS sole jurisdiction over all U visa petitions. 8 C.F.R. § 214.14(c)(1).

---

[1] The Certified Administrative Record ("CAR") is filed in the Electronic Case File ("ECF") at Docket Numbers 12-2, 12-3, and 12-4. Pinpoint citations are to the ECF page numbers at the top of the documents.

A petitioner must meet several criteria to be eligible for U nonimmigrant status, including the following: the petitioner must (1) have "suffered substantial physical or mental abuse as a result of having been a victim of" qualifying criminal activity; (2) possess information about the qualifying criminal activity; and (3) be "helpful" or "likely to be helpful" to a federal, state, or local law enforcement official or prosecutor, a federal or state judge, the Immigration and Naturalization Service of the Department of Justice, or to other federal, state, or local authorities investigating or prosecuting qualifying criminal activity. 8 U.S.C. § 1101(a)(15)(U)(i).

The statute defines qualifying criminal activity as "that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law," and lists numerous categories of criminal activity. 8 U.S.C. § 1101(a)(15)(U)(iii). The corresponding regulation states that "[t]he term 'any similar activity' refers to criminal offenses in which the nature and elements of the offenses are substantially similar to the statutorily enumerated list of criminal activities." 8 C.F.R. § 214.14(a)(9). Of relevance here, qualifying criminal activity includes "felonious assault." 8 U.S.C. § 1101(a)(15)(U)(iii). The statute also includes "attempt, conspiracy, or solicitation to commit any of the above mentioned crimes." *Id.* The burden of establishing U nonimmigrant status is on the petitioner. 8 C.F.R. § 214.14(c)(4).

A petitioner must submit a certification, ("Form I-918B"), that he or she has been helpful or will be helpful in the investigation or prosecution of criminal activity. 8 U.S.C. § 1184(p)(1). *Perez Perez v. Wolf*, 943 F.3d 853, 857–58 (9th Cir. 2019) (describing the form and statutory scheme). In addition to Form I-918B, the U visa petition packet must include "a signed statement by the petitioner describing the facts of the victimization." 8 C.F.R. § 214.14(c)(2)(iii). The petitioner may also submit "additional evidence" to establish U visa eligibility. 8 C.F.R. § 214.14(c)(2)(ii).

In acting on a petition, USCIS "shall consider any credible evidence relevant to the petition." 8 U.S.C. § 1184(p)(4). Agency regulations add that "USCIS will determine, in its sole discretion, the evidentiary value of previously or concurrently submitted evidence," including the I-918B certification form. 8 C.F.R. § 214.14(c)(4). In practice, USCIS gives a properly executed certification form "significant weight," though it "will not consider such certification to be

1  conclusory evidence that the petitioner has met the eligibility requirements." 72 Fed. Reg. 53014,
2  53024 (Sept. 17, 2007).
3        If USCIS approves a petition for U nonimmigrant status, the petitioner receives lawful
4  nonimmigrant status and employment authorization for four years.  8 U.S.C. §§ 1184(p)(3)(B),
5  1184(p)(6).  The petitioner may also apply for U nonimmigrant status for certain qualifying
6  relatives.  Where, as here, the petitioner is over 21 years old, qualifying relatives include the
7  petitioner's spouse.  8 U.S.C. § 1101(a)(15)(U)(ii)(II).  After three years of continuous physical
8  presence in the United States, an individual with a U visa may apply to become a lawful
9  permanent resident.  8 U.S.C. § 1255(m)(1).

### III. The Administrative Proceedings

In late 2014, Mr. Gomez filed a U-Visa petition and a petition for derivative U nonimmigrant status for his wife, Ms. Angel.  (Dkt. No. 12-3 at 66–73.)

#### A. The Application

With his application, Mr. Gomez submitted Form I-918B.  (*Id*. at 75.)  On Mr. Gomez's form, the Sonoma District Attorney's Office certifies that he was "a victim of criminal activity involving or similar to . . . Felonious Assault, Unlawful Criminal Restraint, and Related Crimes." (*Id*.)  The form identifies the statutory activity investigated or prosecuted as "California Penal Code 243(d) (aggravated battery)."  (*Id*. at 76.)  The Sonoma County District Attorney states that Galvez "punched Mr. Gomez in the face injuring his lower lip" and "lunged at Mr. Gomez several times but missed."  (*Id*.)  Under "known or documented injury to the victim" the section reads "[n]o documented physical injuries."  (*Id.*)  The District Attorney also certifies that Mr. Gomez had assisted in the investigation. (*Id.* at 77)

In his declaration, Mr. Gomez states, "When Juan punched me I nearly fell backwards but managed to keep my balance" and that his lower lip "got injured and started bleeding."  (*Id.* at 88.) He notes his mouth "remained sore for a few days." (*Id.* at 89.)  He also describes the size differential between the parties and the effects of the punch stating, "I have a very small stature and Juan is much taller and larger than I am.  My entire mouth area hurt and I took medication to help with the pain.  I had difficulty eating and swallowing my food." (*Id.* at 89.)  Mr. Gomez was

4

diagnosed with post-traumatic stress disorder (PTSD) and depression. (*Id*. at 83.)

### B. USCIS Requested Evidence and Granted Deferred Action

In June 2018, USCIS issued an initial Request for Evidence ("RFE"). (*Id*. at 61.) At that time, USCIS requested "evidence to demonstrate that" Mr. Gomez was "a victim of substantial physical or mental abuse as a result of qualifying criminal activity." Mr. Gomez provided the mental health evaluation performed in 2014. (*Id*. at 50.) Shortly thereafter, USCIS issued a second RFE regarding Mr. Gomez's criminal history. (*Id.* at 46.) Mr. Gomez provided the requested information. (*Id.* at 37.)

In September 2018, USCIS informed Mr. Gomez that he had been placed in "deferred action." The notice informed Mr. Gomez:

> At this time, the evidence you submitted with your petition appears to demonstrate that you have established the eligibility requirements for U nonimmigrant status. However, the statutory cap for U-1 nonimmigrant status has been reached for this fiscal year. Therefore, [USCIS] may not grant U-1 nonimmigrant status to any petitioner until new visas become available. As the fiscal year limit is the sole reason you cannot be granted U-1 nonimmigrant status, your petition is being placed on a waiting list. Once new visas become available, USCIS will issue approval notices for those cases on the waiting list provided that the petitioner remains admissible to the United States and otherwise eligible for U nonimmigrant status.

(Dkt. No. 12-2 at 65). The notice further states that the letter does not "constitute valid U nonimmigrant status or employment authorization and may not be used to demonstrate legal immigration or employment status." (*Id.*)

After granting deferred action, USCIS made three additional requests for evidence. First, in May 2019, USCIS requested documents verifying Mr. Gomez's identity. (*Id.* at 67.) Next, in June 2019, USCIS requested documents regarding Mr. Gomez's prior arrests and alleged prior gang affiliation. (*Id*. at 70–71.) Finally, in November 2019, USCIS requested additional evidence regarding the underlying incident. (*Id.* at 73.) The RFE notes that "the crime indicated on your [Form I-918B], aggravated battery, CA 243(d) is not among those specifically listed in regulation, nor does the evidence provided with your filing include sufficient information to indicate that the noted criminal activity is similar to those crimes." (*Id*.)

### C. The USCIS Denied Mr. Gomez's Petition and His Appeal

USCIS denied Mr. Gomez's petition for U nonimmigrant status and Ms. Angel's derivative petition in February 2020. (Dkt. No. 12-2 at 53–54.) The decision notes the evidence submitted and the relevant legal criteria. (*Id.*) Specifically, USCIS states that it gave "significant weight" to the Sonoma County District Attorney's certification, which listed the crime investigated/prosecuted as CPC § 243(d) (aggravated battery). (*Id.* at 54–55.) USCIS "acknowledges" that aggravated battery, CPC § 243(d), is a qualifying crime and that Mr. Gomez received "minor physical injuries as a result of being punched in the mouth." (*Id.* at 55.)

However, USCIS found that "based on the evidence submitted, the crime investigated was [CPC] § 242, Battery," not § 243(d). (*Id.*) CPC § 243(d) requires the victim suffer "serious bodily injury." In particular, the underlying incident was not a qualifying crime because "[CPC § 243(d)] was not the statute investigated, nor does the evidence submitted establish that you suffered great bodily injury, nor that the incident was likely to produce great bodily injury." (*Id.* at 55.) Because USCIS found Mr. Gomez had not been the victim of a qualifying crime, it found Mr. Gomez ineligible for a U-Visa. (*Id.*).

Plaintiffs promptly asserted a motion to reopen or reconsider the matter. (*Id.* at 24.) They provided a new certification form from the Sonoma County District Attorney's office. (*Id.* at 77–81.) The new form asserts that the crimes investigated were "PC 242, 647(f), and attempted 245(a)(4)." (*Id.* at 78.) CPC § 245(a)(4) prohibits "assault upon the person of another by any means of force likely to produce great bodily injury." In addition, Plaintiffs alleged three errors: (1) the denial was arbitrary and capricious because it came after five RFEs and an initial grant of deferred action; (2) USCIS failed to consider the evidence provided showing the severity of the crime against Mr. Gomez; and (3) USCIS misapplied the evidence to California law when it determined that Mr. Gomez had not been the victim of a qualifying crime. (*Id.* at 27–31.)

USCIS granted Plaintiffs' motion to "reopen and/or reconsider." (*Id.* at 9.) However, after "a complete review of the record of proceeding, including [the motion for reconsideration]," USCIS again denied Plaintiffs' application for a U nonimmigrant status because "the grounds of denial [had] not been overcome." (*Id.* at 6.) This APA action challenging that denial followed.

**DISCUSSION**

Summary judgment is the appropriate mechanism for deciding APA challenges. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). At oral argument, the parties stipulated that the Certified Administrative Record, (Dkt. Nos. 12-2, 12-3, and 12-4), represents an accurate factual record of the proceedings before the agency. Under the APA, "review is limited to assessing whether a U visa determination 'was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'; in violation of a statutory, procedural, or constitutional requirement; or unsupported by 'substantial evidence.'" *Perez Perez*, 943 F.3d at 864 (quoting 5 U.S.C. § 706(2)(A)–(E)).

**I.     APA Challenges**

Plaintiffs challenge the USCIS decision on two grounds.[2] First, Plaintiffs argue that USCIS improperly denied the U-Visa petition based on an impermissible "first responder subjective awareness" rule. (Dkt. No. 13 at 13.) Second, Plaintiffs contend "Defendants wholly ignored Plaintiffs' argument that Mr. Gomez was the victim of [CPC § 245(a)(4)]." The Court addresses each argument in turn.

**A.     USCIS Did Not Apply a "First Responder Subjective Awareness Rule"**

In its initial decision, USCIS found the underlying incident was not a qualifying crime because "[CPC § 243(d)] was not the statute investigated, nor does the evidence submitted establish that you suffered great bodily injury, nor that the incident was likely to produce great bodily injury." (Dkt. No. 12-2 at 55.)

Based on the phrase "[CPC § 243(d)] was not the statute investigated," Plaintiffs object that USCIS gave too much weight to the initial police report, which identifies the crime investigated as § 242 (battery), and too little weight to the I-918B certification form, which identifies the crime prosecuted as § 243(d) (aggravated battery). USCIS must give a properly

---

[2] Plaintiffs also contend that USCIS acted arbitrarily and capriciously when USCIS revoked Deferred Action after telling Mr. Gomez he met the criteria for U nonimmigrant status. (Dkt. No. 13 at 10.) Because the Court finds that USCIS improperly denied the U-Visa petition, the Court will not address the argument regarding Deferred Action.

7

executed certification form "significant weight," but the agency "will not consider such certification to be conclusory evidence that the petitioner has met the eligibility requirements." 72 Fed. Reg. 53014, 53024 (Sept. 17, 2007). Here, USCIS gave "substantial weight" to the Sonoma County District Attorney's certification but nonetheless found that Mr. Gomez was not a victim of Aggravated Battery. (Dkt. No. 12-2 at 55.) To make that finding, USCIS weighed the statute investigated, the statute listed on the certification form, *and* the descriptions of the incident to make its determination. (*Id.*)

Thus, the decision does not, as Plaintiffs claim, "adopt[] the police report's statutory citation to the exclusion of the I-918B's statutory citation." (Dkt. No. 13 at 14.) Rather, the decision weighs the evidence presented and finds that the initial police report's description better aligned with the specific facts of the incident.[3]

### B. USCIS Failed to Analyze CPC § 245(a)(4)

Plaintiffs also assert that "the Agency did not, in fact, address the Cal. Pen. Code § 245(a)(4) (attempted) charge, as was certified by the Sonoma County District Attorney's Office." (Dkt. No. 13 at 15.)

California Penal Code § 245(a)(4) prohibits "assault upon the person of another by means of force likely to produce great bodily injury." In the context of Aggravated Battery, the initial USCIS decision states that "the incident" was not "likely to produce great bodily injury." (Dkt. No. 12-3 at 55.) After USCIS denied Mr. Gomez's petition, he submitted an appeal with new evidence. (Dkt. No. 12-2 at 27.) That new evidence was a new version of Form I-918B. (*Id.* at 77–81.) On that second version of Form I-918B, the Sonoma County District Attorney wrote that the crime investigated or prosecuted was "attempt 245(a)(4)." (*Id.* at 78.) The factual description of the underlying incident remained the same. (*Id.*) USCIS granted the petition for

---

[3] Plaintiffs cite to *Chuil Chulin v. Zuchowski*, 2021 WL 3847825 (N.D. Cal. Aug. 27, 2021) and *In Re Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42 (BIA 1995) for the proposition that an uncorroborated police report should not be given substantial weight. (Dkt. No. 13 at 14.) Those cases are inapposite. The police report in this case is not "uncorroborated." Rather, the police report is specifically corroborated in the I-918B form and—to a large extent—in Plaintiff's own declaration.

8

reconsideration based on this evidence but affirmed its denial because "the grounds of denial [had] not been overcome." (*Id.* at 6–9.)

The APA's arbitrary-and-capricious standard requires that agency actions be reasonable and reasonably explained. *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency. A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id*. The agency must articulate a rational connection between the facts found and the conclusions made. *Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transportation Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1182 (9th Cir. 2021).

Defendants argue that USCIS "reasonably considered the facts in relation to the potentially applicable criminal statutes," including 245(a)(4), because of the single phrase in the initial decision regarding Aggravated Battery: "nor was the incident likely to produce great bodily injury." (Dkt. No. 12 at 20–21.) The Court disagrees.

### 1. Defendants Never Addressed CPC § 245(a)(4)

8 U.S.C. § 1184(p)(4) mandates that USCIS "consider any credible evidence relevant to the petition." After the Sonoma County District Attorney certified that § 245(a)(4) was the crime investigated, USCIS never mentioned § 245(a)(4) in its appellate decision. (Dkt. No. 12-2 at 6.) Defendants cannot rely on the initial decision's discussion of great bodily injury to address this statute because § 245(a)(4) was not discussed or raised at that time. At oral argument, Defendants argued that USCIS anticipated the § 245(a)(4) charge in the initial decision. But the initial USCIS decision provides no support for that argument. Indeed, USCIS never explicitly addressed California's Aggravated Assault statute, § 245(a)(4), in its decision finding Mr. Gomez had not been the victim of felonious assault. Agencies must reasonably consider relevant issues. *Prometheus Radio Project*, 141 S. Ct. at 1158. USCIS did not do so here.

//

//

### 2. Even if USCIS Could Rely on the Initial Decision, that Decision Failed to Articulate a Rational Connection between the Facts Found and the Conclusions Made

The initial USCIS decision never explained *why* the incident was not likely to produce great bodily injury. The USCIS decision emphasizes that Mr. Gomez did not, *in fact*, suffer great bodily injury. (Dkt. No. 12-2 at 55.) The decision dedicates an entire paragraph to an analysis of the injury he received. (*Id*.) By contrast, the decision provides no analysis regarding whether the force at issue was likely to cause great bodily injury.

As Defendants note, a punch can constitute a violation of § 245(a)(4).[4] And Defendants acknowledge that a finder of fact determines "[w]hether a fist would be likely to produce [great bodily] injury [based on] the force of the impact, the manner in which it was used and the circumstances under which the force was applied." *People v. Score*, 48 Cal. App. 2d 495, 498, 120 P.2d 62 (1941). Numerous facts exist in the record that could inform such an analysis. For example, the attacker was much larger than Mr. Gomez, the attacker lunged at Mr. Gomez "several times," Mr. Gomez stumbled backwards from the force of the punch, and Mr. Gomez was sore for a few days after the attack. (Dkt. No. 12-3 at 88–89.) But the USCIS decisions—both before and after the appeal—do not analyze any of these facts. Instead, USCIS simply states that the incident was not "likely to produce great bodily injury" in conclusory fashion. (Dkt. No. 12-2 at 55.) USCIS did not articulate any connection between the facts found and the conclusion made on this point. *Fed. R.R. Admin.*, 988 F.3d at 1182.

Defendants' after the fact explanations regarding § 245(a)(4) cannot be considered. (*See* Dkt. No. 12 at 21.) It is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943)).

In sum, the agency must articulate a rational connection between the facts found and the conclusions made. *Fed. R.R. Admin.*, 988 F.3d at 1182. USCIS did not do so here. Therefore,

---

[4] "That the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury' is well established." *People v. Aguilar*, 16 Cal. 4th 1023, 1028, 945 P.2d 1204, 1207 (1997) (collecting cases).

because the USCIS decision was not "reasonable and reasonably explained," the USCIS decision was "arbitrary and capricious" in violation of 5 U.S.C. § 706(2)(A). *Prometheus Radio Project*, 141 S. Ct. at 1158.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is GRANTED and the case is remanded to USCIS to determine whether Mr. Gomez meets the statutory requirements for eligibility and for an exercise of discretion to grant or deny U nonimmigrant status.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 12.

Dated: June 23, 2022

JACQUELINE SCOTT CORLEY
United States District Judge